UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
WESTERN DIVISION

| | |
|---|---|
| JEFFERY G. HELLWIG )<br>         Plaintiff, )<br>)<br>v. )<br>)<br>CAROLYN COLVIN,[1] Acting )<br>Commissioner of Social Security, )<br>         Defendant. ) | No. 12 CV 50399<br>Magistrate Judge Iain D. Johnston |

**MEMORANDUM OPINION AND ORDER**

Plaintiff Jeffery G. Hellwig brings this action under 42 U.S.C. § 405(g), seeking remand of the decision denying him social security disability benefits. For the reasons set forth below, the case is remanded.

**BACKGROUND**

On November 1, 2009, plaintiff filed a Title II application for disability insurance benefits. R. 55. He stated that he had not been able to work since July 14, 2009 based on (among other things) leg pain from a 1991 accident, depression, and obesity. Dkt. # 12 at p. 1.

On June 29, 2011, a hearing was held before an administrative law judge ("ALJ"). R. 7. Plaintiff testified that he lived in a house in Freeport, Illinois with his wife and two of his children, who were 16 and 8. R. 12. His wife worked as a registered nurse and had medical insurance that also covered plaintiff. R. 13. Plaintiff drove two or three times a week to do things such as picking up his children or grocery shopping. He completed high school, and was taking auto body repair courses to get certified in this area. He had completed 13 of the 50 credit hours needed. R. 14.

---

[1] Pursuant to Federal Rule of Civil Procedure 25(d), Carolyn Colvin is substituted as the defendant for Michael Astrue.

He had last worked as a type of counselor or consumer advocate. He left the job because he started having seizures and would take naps several times a day, sometimes during work. R. 15. The fluorescent lights and computers gave him migraines. He previously worked as a truck driver, messenger, ATM repair man, and security guard. He could not go back to these jobs because he had problems with his legs from an accident and could not walk very far. When the ALJ pointed out that the accident occurred many years ago and that he had worked a number of years after the accident, plaintiff explained that he was able to continue working in his last job as a counselor because his boss helped him out. R. 17. Since he started taking medication for his seizures, he had only had minor seizures triggered by light or stress. R. 18. He had seen a psychiatrist at the Freeport Health Network (FHN) but was no longer seeing her because he could not pay. R. 20. He had been prescribed an anti-depressant medication, although he did not always take it regularly. R. 22. He had pain in his left leg and right knee. He had seen two orthopedists for these problems and had an injection in his left heel. He has prescription medicine for migraines, which he takes on average twice a week. R. 24-26.

Plaintiff testified that he can walk only a couple of city blocks and then he is "done for a couple hours." R. 27. When he goes anywhere "that's [a] long distance, say a zoo or something like that," he has to take a wheelchair. R. 27-28. He uses a cane at times. He can only stand or sit 15 minutes before having problems. R. 28. His doctor limited him to lifting no more than 15 pounds.

On a typical day, he will feed his 8-year old, do some dishes, mow the yard with a riding lawnmower, talk to neighbors, bring in items from the car if somebody brings something home, and watch a significant amount of television. R. 29. He cooks occasionally, and does cleaning around the house, including vacuuming and dusting. R. 31. He is able to bathe and dress himself.

He rides a stationary bike a couple of times a week. As for hobbies, he likes to "tinker around [his] garage" fixing things. R. 32-33.

Plaintiff testified that he had three suicide attempts in the last five years. R. 35. One involved putting a loaded gun in his mouth. R. 35-36, 40. He told two doctors about these attempts, but had never told anybody else including his wife. R. 35. He gets along with some of his siblings but not others. R. 37. He has problems with concentration and memory. He testified that if he is working on a project, such as mowing the lawn, he will often stop in the middle of it and not get back to it until the next day. R. 37. He had speech therapy and special education classes beginning in the 5th grade. R. 41.

On July 25, 2011, the ALJ issued a ruling finding plaintiff not disabled. The ALJ found that plaintiff suffered from several severe impairments, including left hip pain, arthroplasty, history of seizures, headaches, morbid obesity, attention deficit hyperactivity disorder, depression, and a history of polysubstance dependence in sustained full remission. R. 57. The ALJ found that plaintiff's physical impairments did not meet any listings. R. 58-59. As for his mental impairments, the ALJ considered listings 12.02 and 12.04 and found that plaintiff did not satisfy the paragraph B criteria. Specifically, the ALJ found that plaintiff had no more than a mild restriction in his activities of daily living and social functioning and that he had no more than moderate difficulties in his concentration, persistence, or pace. R. 59.

The ALJ concluded that plaintiff had a residual functional capacity ("RFC") to perform light work except that he could lift 20 pounds occasionally and ten pounds frequently; that he could stand or walk at least six hours in an eight-hour day; that he could sit for six hours in an eight-hour day; that he should avoid climbing, heights and dangerous machinery; that he could

perform only simple, unskilled jobs due to problems with concentration; and that he could perform only jobs with routine changes and no high production quotas. R. 59-60.

## DISCUSSION

A reviewing court may enter judgment "affirming, modifying, or reversing the decision of the [Commissioner], with or without remanding the cause for a rehearing." 42 U.S.C. § 405(g). If supported by substantial evidence, the Commissioner's factual findings are conclusive. *Id.* Substantial evidence exists if there is enough evidence that would allow a reasonable mind to determine that the decision's conclusion is supportable. *Richardson v. Perales*, 402 U.S. 389, 399-401 (1971). Accordingly, the reviewing court cannot displace the decision by reconsidering facts or evidence, or by making independent credibility determinations. *Elder v. Astrue*, 529 F.3d 408, 413 (7th Cir. 2008). However, the Seventh Circuit has emphasized that review is not merely a rubber stamp. *Scott v. Barnhart*, 297 F.3d 589, 593 (7th Cir. 2002) (a "mere scintilla" is not substantial evidence). If the Commissioner's decision lacks evidentiary support or adequate discussion, then the court must remand the matter. *Villano v. Astrue*, 556 F.3d 558, 562 (7th Cir. 2009). Moreover, a reviewing court must conduct a critical review of the evidence before affirming the Commissioner's decision. *Eichstadt v. Astrue*, 534 F.3d 663, 665 (7th Cir. 2008). Indeed, even when adequate record evidence exists to support the Commissioner's decision, the decision will not be affirmed if the Commissioner does not build an accurate and logical bridge from the evidence to the conclusion. *Berger v. Astrue*, 516 F.3d 539, 544 (7th Cir. 2008).

Plaintiff raises only two arguments in his opening brief. They focus on his alleged mental impairments. Plaintiff has not challenged the ALJ's analysis of his physical impairments. Therefore, this Court has not evaluated those portions of the ALJ's opinion.

In his first argument, plaintiff asserts that the ALJ should have called a psychiatric expert to testify at the administrative hearing. This claim is based on one piece of evidence: a report from Dr. Kelly Renzi, the psychological consultative examiner who interviewed plaintiff in May 2010. Dkt. # 12 at pp.6-8 (citing and quoting from R. 313-317). Plaintiff acknowledges that the general rule is that "[a]n ALJ may, but is not required to, seek the opinion of a medical expert." Dkt. # 12 at p. 6 (citing 20 C.F.R. § 416.927(e)(2)(iii)).

Plaintiff's argument consists (except for two sentences discussed below) of only a long quotation from Dr. Renzi's report. Plaintiff picks out different sentences from the five-page Renzi report and strings them together in a page-long quotation. Most of the quoted material consists of a summary of what plaintiff told Dr. Renzi about his symptoms and activities and family history. The quoted material states, among other things, that plaintiff had a "long history of depression" and "frequent suicidal ideation" and that he had a family history of completed suicide on both sides of the family. Dkt. # 12 at p. 7. The end of the quoted material is the diagnosis of Dr. Renzi, which states, in pertinent part, that plaintiff has depressive disorder, attention deficit hyperactivity disorder, and a GAF of 50. *Id.* at p. 8; R. 316.

Plaintiff's only formal argument in his opening brief is a single sentence asserting that the quoted portions from the report, when considered with plaintiff's testimony and the fact that he "had not treated with a mental health source," were such that the ALJ should have called a psychiatric expert. *Id.* at 7. Earlier, in the fact section of this brief, plaintiff includes this additional sentence: "The Axis V assessment [by Dr. Renzi] was a 50 which is indicative of a person who cannot sustain competitive employment according to the DSM IV." Dkt. # 12 at p. 5 (emphasis in original).

In its response brief, the government asserts that the ALJ properly exercised its discretion not to call a medical expert. Dkt. # 18 at p. 4 (citing 20 C.F.R. § 404.1527 (e) (2) (iii)). The government asserts that an expert was not needed because there was no evidence of worsening of plaintiff's condition after the state agency psychologists reviewed the record. The government also argues that plaintiff has only made a perfunctory argument that a GAF of 50 is *per se* disabling and that the ALJ's finding of no disability was consistent with the GAF of 50 because "the ALJ found [plaintiff] 'seriously' limited by his mental impairments." *Id.* The government's argument is two paragraphs long.

In his reply brief, plaintiff only briefly addresses this argument, stating that he recognizes that a GAF of 50 by itself is not enough. Dkt. # 19 at p. 1. Beyond this conclusory assertion, he notes that the government in its response brief stated that the ALJ indicated that plaintiff was "seriously" limited by his mental impairments. As for the government's suggestion that he waived his arguments, plaintiff responds with this sentence: "Well, of course I didn't waive the argument that the ALJ didn't adequately explain her conclusions: that's what the whole case is about." *Id.* at 2. But he never explains *how* the ALJ's explanations were inadequate.

As this summary suggests, plaintiff's argument is short, conclusory and confusing in places. He mostly just quotes from the Renzi report, but then fails to explain how the specific observations in that report meet the relevant legal test, such as the four paragraph B criteria for the mental health listings. He fails to marshal the evidence into a sustained argument. Confusingly, he asserts that a medical expert should have been called because he "had not treated with a mental health source." Dkt. # 12 at p.7. But the latter claim is at odds with his testimony before the ALJ. He testified that he had a seen a psychiatrist at FHN "many times" and that she had prescribed anti-depressant medication, although plaintiff also testified that he was no longer

seeing this psychiatrist because he had been turned into collections for a $30 bill. R. 20. Later in his testimony, he stated that he told this same psychiatrist at FHN about his three suicide attempts, thus suggesting that he had some treating relationship with her. R. 35. Yet, he never acknowledges or discusses this evidence. In sum, based solely on these cursory and confusing arguments by plaintiff, this Court cannot conclude at this point that the ALJ abused her discretion in not calling a medical expert.

However, this Court must independently review the ALJ's opinion. *Eichstadt v. Astrue*, 534 F.3d 663, 665 (7th Cir. 2008) (reviewing court must conduct a critical review before affirming). Upon review, this Court finds that a remand is nonetheless warranted. Although plaintiff's argument is poorly developed, which arguably could result in a finding a waiver, this Court nonetheless concludes that plaintiff has sufficiently alerted this Court to the general issue of whether the ALJ provided an adequate explanation for how she viewed the Renzi report. This was a report by an examining psychiatrist. It contains several diagnoses, including that plaintiff suffers from depression and had a GAF of 50. Among other things, the report describes in some detail plaintiff's three self-reported suicide attempts; it notes that plaintiff had a history of completed suicides on both sides of his family; and it states that plaintiff reported that he had not been receiving psychiatric care because he cannot afford it and did not want to be hospitalized. *See* R. 313-317.

However, the ALJ never provided an explanation for what weight she gave to this report or whether she believed it was in conflict with the other medical opinions she relied on. But this discussion is mostly a summary of various observations from the report. There is no explicit or sustained analysis and only a few sentences that arguably contain a hint at how the ALJ viewed the report. Moreover, although the ALJ acknowledged that plaintiff "reported [to Dr. Renzi] a

long history of depression with persistent suicidal ideation," the ALJ did not summarize the details of plaintiff's suicide attempts, as Dr. Renzi did, nor did the ALJ include the family history of suicides, also included in the Renzi report. The ALJ's paragraph about the Renzi report ends with this sentence: "The examiner [*i.e.* Dr. Renzi] also provided a global assessment of functioning score of 50, which is indicative of serious symptoms or any serious impairment in social, occupational, or school functioning (Exhibit 4F)." R. 62. The ALJ does not explain how she evaluated this last sentence. As plaintiff now argues, by pointing out this fact, the ALJ seems to give credence to Dr. Renzi's report and to the conclusion that plaintiff's condition was serious. In sum, this paragraph fails to contain an adequate explanation for how the ALJ weighed the Renzi report.

The only other reference in the ALJ's opinion to Dr. Renzi's report is an indirect one. In her opinion, the ALJ includes the following paragraph about the weight she gave to treating, examining, and non-examining physicians:

> As for the opinion evidence, the record does not contain any opinions from treating or examining physicians indicating the claimant has limitations greater than those determined in this decision. In fact, the course of treatment pursued by his treating sources is not consistent with what one would expect if the claimant were truly disabled. Finally, the residual functional capacity conclusions reached by the physicians employed by the State Disability Determination Services also support a finding of "not disabled". Although those physicians were non-examining and, therefore, their opinions do not as a general matter deserve as much weight as those of examining or treating physicians, those opinions do deserve some weight, particularly in a case like this in which there exist a number of other reasons to reach similar conclusions. Taking all of the above factors into careful consideration, the limitations in the residual functional capacity accommodate the claimant's allegations to the greatest extent reasonably supported by the evidence.

R. 63.

This paragraph is boilerplate. This Court has seen it before. There are no facts or analysis. No doctor is mentioned by name. So it is not even clear which opinions the ALJ is referring to.

In particular, this paragraph fails to answer the basic question of what weight the ALJ gave to Dr. Renzi's report. The ALJ ambiguously states that the record "does not contain any opinions from treating or examining physicians indicating the claimant has limitations greater than those determined by this decision." R. 62. What does this mean exactly? Did the ALJ believe that there were no opinions from treating or examining psychiatrists? Or did she believe that there were some, but their opinions were consistent with her conclusions? If the latter, then the ALJ should provide an explanation to allow this Court to understand how the ALJ viewed the Renzi report in light of the other evidence. What did the ALJ believe about, for example, the GAF of 50 and the suicide attempts?

The ALJ in this paragraph also ambiguously states that she is giving "some weight" to the agency physicians and that this weight is less than the weight she gave to treating and examining physicians, which logically would include Dr. Renzi. Again, this Court cannot tell what this statement means. Did the ALJ believe that Dr. Renzi's report was in conflict with, or alternatively supported by, the assessment of the agency physicians? If the ALJ believed there was a conflict, then the ALJ was obligated to provide some explanation for why she credited the non-examining agency physicians over Dr. Renzi. *See Czarnecki v. Colvin*, __ Fed. Appx. __, 2015 WL 55438, *6 (7th Cir. Jan. 5, 2015) (remanding case: "The ALJ also credited, without explanation, the opinions of the two state-agency reviewing psychologists over that of Dr. Wagner, the state-agency psychologist who personally evaluated Czarnecki in 2010, diagnosed her with major depressive disorder and panic disorder, and rated her GAF at 40."); *Beardsley v. Colvin*, 758 F.3d 834, 839 (7th Cir. 2014) (remanding case: "The problem in this case is that the ALJ did not provide a valid explanation for preferring the record reviewer's analysis over that of the agency's examining doctor.").

More generally, although plaintiff did not raise this argument in his briefs, the ALJ failed to follow Social Security regulations regarding medical testimony, sometimes referred to as the treating physician rule. 20 C.F.R. § 404.1527(c)(2); 20 C.F.R. § 404.1513. These regulations set forth a hierarchy of medical opinion testimony for treating, examining, and non-examining physicians. *Id.* In general, opinions from treating sources with treating relationships are given the most weight. 20 C.F.R. §404.1527(c)(2). Opinions from examining sources are usually given more weight than medical opinions from non-examining sources. 20 C.F.R. §404.1527(c)(1), (e). The key requirement is that the ALJ must explain what specific weight, if any, all these opinions should be given after explicitly analyzing what the Seventh Circuit refers to as "the checklist" of factors. [2] 20 C.F.R. §404.1527(e); *Larson v. Astrue*, 615 F.3d, 744, 751 (7th Cir. 2010) (referring to the checklist); *Bauer v. Astrue*, 532 F.3d 606, 608 (7th Cir. 2008) (same).

Here, the ALJ provided no explanation of how she evaluated either the Renzi report or the opinions of the state agency physicians. In addition, as noted above, plaintiff testified that he was treated for some period of time by a therapist at FHN Counseling (Dr. Rowjee) who prescribed anti-depressant medication. *See* R. 238. This raises a question whether Dr. Rowjee qualifies as a treating physician. Neither plaintiff nor the ALJ addressed this possibility, although the ALJ in her opinion noted in passing that plaintiff had seen a "psychiatrist at FHN." R. 61. Also during the hearing, the ALJ referred to a report from the FHN therapist. R. 35. This issue should be explored more fully on remand. In sum, the boilerplate paragraph above does not comply with the treating physician rule in multiple respects. To return to the original question of

---

[2] The factors are: (1) the length of treatment; (2) the nature and extent of the treatment relationship; (3) the supportability of the medical opinion; (4) the consistency of the opinion with the record as a whole; (5) the physician's degree of specialization; and (6) other factors which tend to support or contradict the opinion. 20 C.F.R. § 404.1527(c)(2)(i)-(ii), (c)(3)-(6).

whether a medical expert should have been called, the Court notes that there are multiple medical opinions in the record that the ALJ did not fully discuss. It is simply not clear at this point how the ALJ viewed this evidence, and therefore this Court cannot determine whether a medical expert would have been helpful. This issue also can be re-visited on remand.

Having concluded that a remand is required based on plaintiff's first argument, this Court need not evaluate plaintiff's second argument, which is that the ALJ impermissibly used boilerplate language about concentration, persistence and pace in the hypothetical to the vocational expert. This issue can be addressed further on remand if warranted after new proceedings have been conducted.

In remanding this case for further proceedings, this Court does "not say that [plaintiff] is in fact totally disabled from gainfully employment," but merely finds that plaintiff is "entitled to a more careful analysis of his claim by the Social Security Administration." *Voigt v. Colvin*, __ F.3d __, 2015 WL 1346192, *7 (7th Cir. March 26, 2015). Plenty of record evidence exists that would support a finding that plaintiff is not disabled, and plaintiff's briefs did not help his cause much. However, the errors identified above prevent the Court from affirming based upon the ALJ's opinion.

## CONCLUSION

For the reasons given, plaintiff's motion for summary judgment is granted, the government's motion is denied, and the case is remanded to the Commissioner for further proceedings consistent with this opinion.

Date: April 3, 2015    By: _____
    Iain D. Johnston
    United States Magistrate Judge